SEXTON, Judge.
The defendant-appellant, a farmer of rice and soybeans in East Carroll Parish, appeals an adverse judgment herein rendered on January 28, 1983, issuing preliminary and permanent injunctions.
In that judgment the defendant was directed to remove at his expense a dam or weir constructed by him in Drainage Canal L-6E, and was further enjoined and restrained from erecting or constructing “any dam, weir or other type barrier or obstruction” in that same canal, or any other drainage canal in East Carroll Parish.
This dispute actually arose in 1978 when the defendant constructed a weir or dam across the canal in question. Upon his refusal to remove that weir, plaintiff filed suit and judgment was rendered against the defendant on February 20, 1979 ordering removal of the weir within sixty days. Subsequent to the issuance of a suspensive appeal to this Court, and while the appeal was pending, the parties entered into a compromise agreement which allowed the installation by the defendant of a weir in the canal at a certain point and under certain restrictions.[1] In this compromise *891 agreement, the defendant agreed that the top height of the weir would not exceed 82.5 feet mean sea level and that he would construct a control gate 5' wide and 4' deep to be opened and closed on the orders of a three man commission to be appointed by the police jury. The defendant also agreed to withdraw his pending appeal. The police jury retained the authority to review the permit by January 1 of each year and to revoke the permit if the weir was no longer used for irrigation purposes or in the event conditions in the water shed area changed such that the Louisiana Department of Public Works determined that the weir obstructed drainage. It was also stipulated that the control gate would remain open at all times except during the irrigation season. Implicit in the agreement was defendant’s obligation to properly maintain the weir.
In written reasons for judgment the trial court specifically found that the weir of the defendant was too high and that the gate in the weir was not up to specifications. The trial court further found that the defendant had constructed two earthen dams, each higher than the permissible height of the weir, and had placed culverts in the canal blocking drainage without the authority of the police jury. The court stated “all of the facts described are found to block the drainage canals so that the Defendant, his agent or employees could impound water for irrigation of their crops, without regard for the authority of the police jury, the court or neighboring farmers.” Thus, apparently the trial court agreed that the actions of the defendant in constructing the dams and installing the culverts implicitly violated the compromise agreement.
Before us the defendant-appellant asserts three specifications of error. The first is that the trial court erred in finding that the weir was of an improper height and that the gate was not up to specifications. Secondly, it is asserted that the trial court erred in finding the construction of the two dams violated the terms of the permit. Finally, error is asserted “in finding that defendant failed to maintain the weir.” We will pretermit discussion of appellant’s third assignment because we are unable to determine that the trial judge made such a finding, or that such a finding entered into the decision of the trial judge.
With respect to that part of Assignment No. 1 concerning the gate not being up to *892 specifications, the evidence in that regard came from Terry D. Denman, a civil engineer called by plaintiff. He testified that the gate was indeed 5' wide and 4' in depth, but that it would not allow a flow of four feet of water. He testified that only 2.9 feet of water could flow through the gate. Thus, the import of the expert engineer’s testimony was that the gate was of satisfactory dimensions but that the flow of water did not match those dimensions. The compromise agreement between the parties only specified the dimensions of the gate and made no requirement with respect to the volume of water which should flow through the gate. Therefore, to the extent that the trial court found that the gate was not up to specifications, the trial court was in error. We thus proceed to consider Specification of Error No. 1 with respect to the question of the height of the weir only.
The principal evidence in this respect again comes from plaintiff’s expert civil engineer, Mr. Denman, and is dramatized by the photographs P-7A-D and P-8D, as well as P-6, the engineer’s diagram of the canal which depicts the weir, bank structure and location of water flow. This latter, P-6, is particularly helpful when compared to the photographs as it shows the precise elevation of various points along the weir.
The record indicates that the weir had to be substantially repaired on two separate occasions. The first occurred sometime in 1979 when the west side of the weir apparently was damaged by an explosion. Later in 1980, subsequent to dredging work by the police jury in close proximity to the weir, the east bank washed out around the weir. The record makes it clear that the work necessary to complete effective repairs on each side was difficult because of the nature of the weir, the stream, and the damage.
P-6 and the photographic evidence referenced previously make it clear that the weir is measureably above the authorized 82.5 foot level only in the areas where repair occurred. It is actually lower in the main channel area. On the east side it only rises above the 82.5 foot level at the point where the weir crosses the old bank line (the location of the east bank prior to the extensive washout there). The only place the weir is too high in the main portion of the canal is on both sides of the gate — and there by only scant inches. The gate is located toward the west side of the canal, and the weir is about six inches too high on the east side of the gate and is about four and one-half inches too high on the west side of the gate. From the point where the weir is four and one-half inches too high on the west side of the gate, it rises steadily to the point where it contacts the west bank. It is approximately two and one-half feet too high at that point. It was necessary for the defendant to pour a good deal of concrete in order to stabilize the weir on that end subsequent to the apparent explosive damage. Considering the nature of the weir, the canal, and the damage, that deviation does not appear unreasonable. Most importantly, it was not demonstrated that this height deviation was so substantial as to effectively retard a significant volume of water.
All factors considered, we are not convinced that the record is sufficient to support the trial judge’s holding concerning the impropriety of the weir’s height. Actually, the evidence is that the height of the weir is substantially in compliance with the compromise agreement.
Thus we consider the final and decisive issue of whether the trial court erred in determining that the earthen dams operated to violate the compromise agreement.
Subsequent to the washout on the east side of the weir previously referenced, plaintiff constructed an earthen dam across the canal thirty or forty feet in front of the weir. Several days later, a massive rain caused that weir to wash out. The defendant’s son, David Elliott, who constructed the dam, testified that he precipitated the washout of the dam by removing the plastic sheeting which he had placed on top to enable the dam to retain its structural integrity. After the massive rain, the defendant reconstructed this dam, and he asserted that both dams were lower than the weir. However, photographs introduced in *893 evidence indicate that this dam was several feet thick and the testimony of all witnesses except the defendant and his son preponderates that it was substantially higher than the weir. There was no opening or gate therein.
Obviously the dam was a substitute for the weir. There seems to be no real disagreement that it was intended not only to facilitate repairs on the weir, but also to provide defendant with an irrigation capability. In placing such a substitute the defendant was obligated to be certain that it substantially complied with the terms of the agreement with respect to size and a capability for regulating water flow — particularly considering defendant’s delay in repairing the weir. We agree with the defendant’s contention that the unique metal sheeting required to repair the weir and the fact that it was not available locally, preponderates that the defendant was not unduly remiss in making repairs on the weir. Thus, the delay itself should not be a basis for finding that the defendant violated the agreement. However, it heightened defendant’s obligation to construct and maintain any substitute in accordance with the terms of the agreement.
The record is replete with evidence that the dam was a large structure, more than substantially exceeding the height of the weir. It contained no gate or capability for the release of excessive water. In fact, the evidence preponderates that substantial low land flooding occurred at least once and perhaps twice as a result of the existence of the dams. Also, photographs in evidence indicate that the dam retained a substantial body of water which appears to be in excess of the capacity of the weir. These factors, as well as others not specifically enumerated, amply support a conclusion that the nature, dimensions and capacity of the dams which were a substitute for the weir exceeded the- terms of the compromise agreement.
Therefore, the record being in support of the trial judge’s determination in this factual regard, it is not manifestly erroneous and will not be disturbed by us on appeal. Ar-ceneaux v. Domingue, 365 So.2d 1330 (La.1978). The judgment appealed from is affirmed at appellant’s cost.
AFFIRMED.

. “This is to certify that the East Carroll Parish Police Jury hereby grants a permit to Joseph R. Elliott, his heirs, successors or assigns, to construct and install a metal weir in parish drainage canal L6E at a point approximately 200 feet south of the intersection of Parish drainage canals L6E and L6E1, located in T21NR11E, Section 22, East Carroll Parish, Louisiana ac *891 cording to the following requirements and stipulations:
1. Elevation at top of weir shall be a height of 82.5 feet MSL.
2. A control gate 5 feet wide and 4 feet in depth shall be constructed in approximate center of weir at the expense of Joseph R. Elliott, his heirs, successors or assigns.
3. Control gate shall be opened and closed by a three-man Commission appointed by the East Carroll Parish Police Jury and said Commission are hereby required to open said control gate whenever elevation of drainage water at the weir is at 83.5 feet MSL and remain opened until elevation reaches 82.5 feet MSL and control gate may be closed whenever elevation of drainage water is 82.5 feet MSL at the weir.
4. East Carroll Parish Police Jury retains the authority to review this permit on or before January 1 of each year and may revoke the permit should the East Carroll Parish Police Jury become aware that the weir will no longer be used for irrigation purposes. In the event that the weir will no longer be used for irrigation purposes and the permit is revoked for that reason it is hereby agreed that Joseph R. Elliott, his heirs, successors or ■ assigns, shall remove said weir at the expense of Joseph R. Elliott, his heirs, successors, or assigns.
5. Joseph R. Elliott agrees to withdraw his appeal to the Second Court of Appeals of Lawsuit Docket # 11,646, Sixth Judicial Court, East Carroll Parish Louisiana upon the execution of this permit.
6. The East Carroll Parish Police Jury retains the authority to review this permit on or before January 1 of each year and in the event that additional woodlands are cleared in the watershed area lying north of said weir in the future, or conditions change, such that the La. Dept, of Public Works determines that the weir obstructs drainage, or the La. Dept, of Public Works determines that it is in the best interest of East Carroll Parish for the weir to be removed, the Jury may revoke this permit and in this event, the weir shall be removed or altered upon the recommendations and authority of the East Carroll Parish Police Jury and said alteration or removal shall at the expense of Joseph R. Elliott, his heirs, successors or assigns.
7. Control gate shall remain opened at all times except during the growing irrigation season.”